FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 16, 2025

SEAN F. MCAVOY, CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RAYMOND O.,[1] <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, <br> Commissioner of Social Security, <br><br> Defendant. | No.  2:25-cv-00205-EFS <br><br> **ORDER AFFIRMING THE ALJ'S DENIAL OF BENEFITS** |

Due to major depressive disorder, anxiety, post-traumatic stress disorder (PTSD), and sleep disorders, Plaintiff Raymond O. claims that he is unable to work fulltime and applied for supplemental security income benefits. He appeals the denial of benefits by the

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

DISPOSITIVE ORDER - 1

Administrative Law Judge (ALJ) on the grounds that the ALJ improperly analyzed the opinions of Thomas Genthe, PhD, and improperly assessed Plaintiff's credibility as to his mental impairments. As is explained below, Plaintiff has not established any consequential error. The ALJ's denial of benefits is affirmed.

## I.    Background

In September 2022, Plaintiff filed an application for benefits under Title 16, claiming disability beginning September 1, 2007, based on the mental impairments noted above.[2] Plaintiff's claim was denied at the initial and reconsideration levels.[3]

After the agency denied Plaintiff benefits, ALJ Marie Palachuk held a telephone hearing in April 2024, at which Plaintiff appeared with his representative.[4] Plaintiff testified at the hearing and a vocational expert also testified.[5]

---

[2] AR 264, 266, 307.

[3] AR 141, 147.

[4] AR 65-89.

[5] *Id.*

After the hearing, the ALJ issued a decision denying benefits.[6] The ALJ ruled that she found no basis to reopen a prior claim denied by an ALJ on July 28, 2021.[7] The ALJ also found that Plaintiff had rebutted the presumption of continuing nondisabilty pursuant to *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1998) because he had attained sobriety after the date of the prior adjudication.[8] The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and the other evidence.[9] As to medical opinions, the ALJ found:

- The opinions of state agency evaluators Rita Flanagan, PhD, and John Wolfe, PhD, that drug and alcohol addiction were material to be not persuasive but their opinions

---

[6] AR 14-35.  Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[7] AR 17.

[8] AR 17-18.

[9] AR 23-25.

regarding Plaintiff's functioning without the effects of drugs and alcohol to be partially persuasive.

- The opinions of state agency evaluators Aaron Snyder, MD, and Robert Stuart, MD, that Plaintiff did not have a severe physical impairment to be persuasive.

- The December 2018 and February 2022 opinions of examining source Thomas Genthe, PhD, to be not persuasive.[10]

The ALJ also considered the third-party witness statement of Plaintiff's sister and found it was not generally consistent with the record as a whole.[11] As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since September 15, 2022, the application date.

---

[10] AR 25-28.

[11] AR 25.

- Step two: Plaintiff had the following medically determinable severe impairments: major depressive disorder, anxiety, and PTSD.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments, and the ALJ specifically considered Listings 12.04, 12.06, and 12.15.

- RFC:  Plaintiff had the RFC to perform work at all exertional levels with the following nonexertional limitations exceptions:

   [Plaintiff is] able to understand, remember, and carry out simple routine tasks; is able to maintain concentration, persistence, and pace for the limited two hour periods required between regularly scheduled breaks; needs to be in a predictable environment (a lack of changes in work routine); no public contact, and only occasional and superficial interaction with coworkers and supervisors.

- Step four: Plaintiff has no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a floor

waxer (DOT 381.687-034), hand packager (DOT 920.587-018), and marker (DOT 209.587-034).[12]

Plaintiff sought timely review from the Appeals Council and the Appeals Council denied review on November 17, 2023, after which Plaintiff filed suit in this Court.[13]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[14] and such error impacted the nondisability determination.[15] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such

---

[12] AR 20-29.

[13] AR 1-6, 261.

[14] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[15] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[16]

### III.    Analysis

Plaintiff seeks relief from the denial of disability on two grounds. He argues the ALJ erred when evaluating the medical opinions of Dr. Genthe and when evaluating Plaintiff's subjective complaints regarding his mental impairments, and those errors resulted in a third error at step five.  As is explained below, the Court concludes that Plaintiff fails to establish the ALJ erred in her evaluation of the

---

[16] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

medical opinion evidence or Plaintiff's symptom reports and because there was no error at those steps, there was no error at step five.

## A.     Medical Opinion: Plaintiff fails to establish consequential error.

Plaintiff argues the ALJ erred in her evaluation of the medical opinions.[17]  Specifically, Plaintiff first argues that the ALJ erred in rejecting the opinions of examining psychologist, Dr. Genthe. Specifically, Plaintiff argues that the ALJ erred in finding that the severe and marked limitations opined to by Dr. Genthe were not supported by Plaintiff's presentation and reported independence in his daily activities.[18] Additionally, Plaintiff argues that the ALJ erred in finding that Dr. Genthe's opined limitations were inconsistent with the improvement in Plaintiff's symptoms after sobriety and treatment,

---

[17] An ALJ must consider and articulate how persuasive he found each medical opinion, including whether the medical opinion was consistent with and supported by the record. 20 C.F.R. § 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

[18] ECF No. 8.

particularly in light of Plaintiff's lack of candor in admitting the extent of his alcohol and drug use to Dr. Genthe.[19] The Commissioner argues that the ALJ did not err in discounting Dr. Genthe's opinions because they were based upon an inaccurate diagnostic picture.[20]

### 1. Standard

The ALJ was required to consider and evaluate the persuasiveness of the medical opinions and prior administrative medical findings.[21] The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[22] Supportability and consistency are the most important factors,[23] and the ALJ must explain how he considered the supportability and consistency factors when reviewing the medical

---

[19] *Id.*

[20] ECF No. 12.

[21] 20 C.F.R. § 416.920c(a), (b).

[22] *Id.* § 416.920c(c)(1)–(5).

[23] *Id.* § 416.920c(b)(2).

opinions and support her explanation with substantial evidence.[24] The ALJ may consider, but is not required to discuss the following additional factors: the source's relationship to Plaintiff such as length of the treatment, purpose of the treatment relation and whether the source examined Plaintiff, as well as whether the source had advanced training or experience to specialize in the area of medicine in which the opinion was being given.[25] When considering the ALJ's findings, the Court is constrained to the reasons and supporting explanation offered by the ALJ.[26]  An ALJ is not required to articulate how they considered

---

[24] *Id.* § 416.920c(b)(2); *Woods v. Kijakazi*, 32 F.4th a at 785 ("The agency must articulate . . . how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings.") (cleaned up).

[25] *Id.* § 416.920c

[26] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (recognizing court review is constrained to the reasons the ALJ gave).

evidence from nonmedical sources using the requirements in

paragraphs (a) through (c).[27]

    2.   <u>Dr. Genthe's Opinions</u>

On December 19, 2018, Plaintiff presented to Dr. Genthe for

examination at the request of the Washington State Department of

Social and Health Services.[28]  Dr. Genthe completed a

Psychological/Psychiatric Evaluation.[29] Dr. Genthe completed a

detailed report that included a clinical interview, medical and mental

health treatment history, educational and work history, substance use

history, activities of daily living, clinical findings, mental status

examination, diagnosis and a medical source statement.[30] Plaintiff

reported that he was living in a substance abuse facility, that he had

never received mental health treatment, that he had no problem

getting along with others on a superficial basis, that he dropped out of

---

[27] 20 C.F.R. § 416.920c(d).

[28] AR 2266-2270.

[29] *Id.*

[30] *Id.*

school in the 11th grade, that he last worked in 2011 as a pizza baker and that he abused alcohol daily.[31] Plaintiff reported that he was able to self-care, prepare meals, do household chores, manage medications and appointments and shop.[32] Dr. Genthe diagnosed major depressive disorder, PTSD, and alcohol use disorder in early remission.[33]

Dr. Genthe opined that Plaintiff would have a moderate limitation in performing the following tasks: understand, remember and persist in tasks following detailed instructions; perform activities in a schedule and maintain regular attendance; adapt to changes in a routine work setting; be aware of normal hazards; and set realistic goals and plan independently.[34] Dr. Genthe opined that Plaintiff had a marked limitation in performing the following tasks: ask simple questions or request assistance, communicate and perform effectively in a work setting, maintain appropriate behavior, and complete a

---

[31] AR 2266-2267.

[32] AR 2267.

[33] AR 2268.

[34] AR 2269.

normal work week or work day without interruption.[35] Dr. Genthe opined that Plaintiff's prognosis was guarded and that he was unlikely to function in a work setting until his symptoms were managed more effectively.[36]

On September 16, 2022, Plaintiff presented to Dr. Genthe for a second examination at the request of the Washington State Department of Social and Health Services.[37] Again, Dr. Genthe completed a detailed report that included a clinical interview, medical and mental health treatment history, educational and work history, substance use history, activities of daily living, clinical findings, mental status examination, diagnosis and a medical source statement.[38] Plaintiff reported that he was renting an apartment, had difficulty interacting with others due to "anger issues," had been in mental health treatment for three years, had used marijuana when he was 18

---

[35] *Id.*

[36] *Id.*

[37] AR 392-399.

[38] *Id.*

years old, and was currently using alcohol.[39] Plaintiff reported that he was able to self-care, prepare meals, do household chores, manage medications and appointments, and shop.[40] Dr. Genthe diagnosed major depressive disorder, PTSD, attention-deficit/hyperactivity disorder, intermittent explosive disorder, personality disorder (rule-out), cannabis use disorder in sustained remission, and alcohol use disorder in early remission.[41]

Dr. Genthe opined that Plaintiff would have a moderate limitation in performing the following tasks: understand, remember and persist in tasks following simple instructions, perform routine tasks without special supervision, and make simple work-related decisions.[42] Dr. Genthe opined that Plaintiff had a marked limitation in performing the following tasks: perform routine tasks without special supervision, learn new tasks, be aware of hazards, ask simple

---

[39] AR 392-393.

[40] AR 393-394.

[41] AR 395.

[42] AR 395-396.

questions or request assistance, and set realistic goals and plan

independently.[43] Dr. Genthe opined that Plaintiff had a severe

limitation in performing the following tasks: understand, remember

and persist in tasks following detailed instructions; adapt to changes in

a routine work setting; communicate and perform effectively in a work

setting; maintain appropriate behavior in a work setting; and complete

a normal work week or work day without interruption.[44] Dr. Genthe

opined that Plaintiff's prognosis was fair and that he was unlikely to

function in a work setting until his symptoms were managed more

effectively.[45]

     3.   <u>Analysis</u>

     The ALJ gave the following reasoning as to her consideration of

Dr. Genthe's opinions:

> Dr. Genthe's opinions are not persuasive. In the
> examinations, the claimant had difficulty with memory,
> concentration, insight, and judgment (1F/2-8, B12F/1-6). He
> also gave excessive responses to questions (id.). The

---

[43] AR 395-396.

[44] *Id.*

[45] AR 396.

opinions from Dr. Genthe are supported by the mental status examination findings. However, the claimant had appropriate hygiene and dress and reported being independent in most activities of daily living, which does not provide support for the marked and greater limitations reported by the examining psychologist (id.). Moreover, Dr. Genthe's opinions are inconsistent with improvement in mental symptoms with sobriety and treatment, the report of managing stress with walking, the report of anger being controlled, the observations of appropriate concentration and intact memory in 2023, and the claimant's report of being independent in most activities of daily living (see B1F/2-4, B11F/1, 3-4, 6, 9, 12, 14, 16, B14F/31, 51). Additionally, as discussed above, the claimant appears to have minimized his alcohol and cannabis use in the September 2022 DSHS examination and did not report his history of methamphetamine use in either the 2018 or 2022 DSHS examinations, which implies that Dr. Genthe did not fully consider the extent to which substance use effected the claimant's mental functioning (B1F, B12F).[46]

Plaintiff argues:

. . . Dr. Genthe did consider Plaintiff's substance use and recommend a chemical dependency assessment and substance use treatment.  Even so, he believed that Plaintiff would continue to be limited even with 60-days of sobriety and that these limitations would persist until Plaintiff's psychological symptoms were managed more effectively. While Dr. Genthe might not have been aware of the extent of Plaintiff's substance use, he was basing his opinions on

---

[46] AR 27-28.

1

2

Plaintiff's reported functioning and presentation (with no evidence of impairment at the interview).[47]

3

4

5

6

7

8

Plaintiff concedes, and the record establishes that at the time that Plaintiff was examined by Dr. Genthe, he provided false information regarding the last time that he used alcohol or marijuana and that he withheld altogether the fact that he had a history of abusing methamphetamines.

9

10

11

12

13

14

15

16

17

On September 10, 2016, Plaintiff admitted to treating source Stacy Prescott, MD, that he was abusing alcohol and methamphetamines.[48] On November 7, 2018, Plaintiff presented to Marie Hughes, RN of the ER, with complaints that he had injured his hand that day but stated that the injury happened before he got drunk and not while he was drunk.[49] He reported that he drank 6-8 "high octane" beers daily.[50] In August 2019, only months after Dr. Genthe's

18

19

[47] ECF No. 8.

20

[48] AR 476.

21

[49] AR 754.

22

[50] AR 754-755.

23

first evaluation, Plaintiff admitted to treating source Niels Harden, MD, that he was abusing alcohol, methamphetamine, and marijuana that day.[51]

Records establish that in 2022 Plaintiff was actively abusing alcohol, methamphetamine, and marijuana.[52] In December 2021, Plaintiff presented to Stephen Penaskovic, MD, of the ER with complaints that he fell and hit his head after drinking alcohol that day.[53] On June 12, 2022, Plaintiff presented to the ER with abdominal pain and reported to Geoffrey McKinzie, MD, that he was actively using alcohol, marijuana, and methamphetamine. On August 10, 2022, Plaintiff admitted to treating provider Craig Robertson, PA-C, that he was actively using methamphetamines and marijuana twice a week and drinking 6-8 tall cans of beer.[54]  On September 28, 2022, Plaintiff reported to treating source Cal Smith, MD, when he sought treatment

---

[51] AR 447.

[52] AR 676-678.

[53] AR 703.

[54] AR 671.

for chest pain that he was using alcohol, methamphetamine, and marijuana.[55]

While Plaintiff concedes that the record shows Plaintiff was abusing alcohol and substances during the time frame in which he was examined by Dr. Genthe, he argues that this fact is irrelevant because Dr. Genthe based his opinion on Plaintiff's reported ability to function. Plaintiff argues, "The ALJ's belief that Plaintiff's substance use played a role in the limitations Dr. Genthe had assessed had no basis in the record and failed to be substantial evidence supporting her conclusions."[56]

Having reviewed the record, the Court concludes that Plaintiff's argument is not supported by the record and defies logic. While Plaintiff is correct that Dr. Genthe based much of his opinion on Plaintiff's reported functioning, it is of note that Plaintiff was reporting his ability to function while under the influence of alcohol and substances. At a time that Plaintiff was inebriated to the extent that

_____

[55] AR 665-667.

[56] ECF No. 8, pg. 14.

he was falling and sustained both hand and head injuries, his functioning was clearly being impaired by substance use.  Similarly, if Plaintiff reported an inability to get along with others at a time that he was abusing alcohol and substances daily, there is at least a reasonable possibility that his substance abuse would affect his ability to function and relate to others. The Court finds that the ALJ was not unreasonable in considering that issue.

An ALJ may consider whether a claimant offers conflicting symptom reports or other inconsistent statements that indicate a lack of candor.[57] The tendency to exaggerate or engage in manipulative conduct during the process is a permissible reason to discount the claimant's reported symptoms.[58]

---

[57] 20 C.F.R. § 416.929(c)(4). *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid.").

[58] *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

DISPOSITIVE ORDER - 20

Given that Dr. Genthe's opinions were based on an incomplete understanding of both the extent of Plaintiff's substance abuse and the recency of the abuse in relation to his examination, the Court concludes that the ALJ's reasoning was not improper.  Because the Court concludes that Dr. Genthe's opinions were based on incomplete or inaccurate reports, the ALJ did not err in rejecting the opinions. The Court thus concludes that Plaintiff failed to establish consequential error in the ALJ's consideration of Dr. Genthe's opinions.

4.   <u>Summary</u>

Because the ALJ committed no error in his consideration of the opinions of Dr. Genthe, the Court finds that no consequential error occurred and a remand is not warranted.

**B.   Symptom Reports: Plaintiff fails to establish consequential error**

Plaintiff argues the ALJ failed to properly assess his subjective complaints regarding mental impairments only.  He argues that the ALJ erred in finding that his subjective complaints were not consistent with his own prior statements and that his inconsistent statements regarding his substance abuse cast doubt on his testimony.

The Court concludes that based upon the record before it, the ALJ's reasoning was not improper, and Plaintiff has failed to establish consequential error.

1.   Standard

When examining a claimant's symptoms, the ALJ utilizes a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[59] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[60] General findings are insufficient; rather, the ALJ must identify what symptom claims are

---

[59] *Molina*, 674 F.3d at 1112.

[60] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

being discounted and what evidence undermines these claims.[61] "The clear and convincing standard is the most demanding required in Social Security cases."[62] Therefore, if an ALJ does not articulate specific, clear, and convincing reasons to reject a claimant's symptoms, the corresponding limitations must be included in the RFC.[63]

––––––––––––––––––––

[61] *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), and *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he discounted claimant's symptom claims)).

[62] *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

[63] *Lingenfelter*, 504 F.3d at 1035 ("[T]he ALJ failed to provide clear and convincing reasons for finding Lingenfelter's alleged pain and symptoms not credible, and therefore was required to include these limitations in his assessment of Lingenfelter's RFC.").

2.    <u>The ALJ's Reasoning and Analysis</u>

The ALJ articulated the following:

> Additionally, the undersigned notes that the claimant's testimony about being sober from alcohol use since February 28, 2023, seems to be inconsistent with the medical evidence. In December 2023, the claimant told a primary care provider that he was drinking about three small bottles daily and "thought that this is enough" (B14F/27). This report implies that the claimant resumed alcohol use, but not at the level he was using previously. It was also noted that he was not using drugs. However, only a few days later, he reported using marijuana in the prior week for pain, which seems inconsistent with his report of not using drugs (B10F/3). The inconsistent reports of substance use suggests that the claimant's statements about his mental symptoms and limitations are not entirely reliable.[64]

As the Court noted previously, it was not improper for the ALJ to consider Plaintiff's inconsistent statements regarding his substance abuse, and the Court concludes that the ALJ adequately explained her reasoning as to how Plaintiff's reports regarding his substance abuse were inconsistent. The ALJ committed no error. The Court declines to remand as to this issue.

---

[64] AR 24.

### 3.    Summary

It is the ALJ's responsibility to review and evaluate the conflicting evidence and Plaintiff's subjective complaints.[65] The ALJ meaningfully explained why she evaluated Plaintiff's subjective complaints as she did, and these reasons are supported by substantial evidence.

## C.    Step five: The Court finds this issue moot.

Plaintiff alleges that because the ALJ erred in rejecting the opined limitations provided by Dr. Genthe and by discounting Plaintiff's subjective testimony the ALJ gave a flawed hypothetical to the VE.  Because the Court has concluded that the ALJ did not err in either regard, this step-five issue is moot.

## IV.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **AFFIRMED**.

---

[65] *Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999).

2.     The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and 12**, enter **JUDGMENT** in favor of **Defendant**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 16th day of December 2025.

_____

EDWARD F. SHEA
Senior United States District Judge